IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KARL R. JARVIS,[1] | § | |
| | § | No. 105, 2020 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN19-01993 |
| DONNA MOLE and DAVID BAND, | § | Petition No. 19-07069 |
| | § | |
| Respondents Below, | § | |
| Appellees. | § | |

Submitted: September 18, 2020
Decided: November 12, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

After consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The petitioner below-appellant, Karl R. Jarvis ("the Former Step-Grandfather"), filed this appeal from a Family Court order, dated February 21, 2020, denying his petition for third-party visitation. For the reasons set forth below, we affirm the Family Court's judgment.

(2) The child ("the Child"), who was born in 2015, is the son of Donna Mole ("the Mother") and David Band ("the Father"). The Former Step-Grandfather

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

is the former husband of the Child's maternal grandmother ("the Grandmother"). The Mother and Child spent time at the residence of the Grandmother and Former Step-Grandfather during their marriage and divorce proceedings.

(3) On March 8, 2019, the Former Step-Grandfather filed a petition for third-party visitation. The Mother opposed the petition. After the Former Step-Grandfather and the Mother failed to appear for mediation, the Family Court dismissed the petition. The Former Step-Grandfather moved to reopen the matter, alleging that he was hospitalized at the time of the mediation. The Family Court granted the motion over the Mother's objection.

(4) The Family Court held hearings on the Former Step-Grandfather's petition on November 8, 2019 and November 25, 2019. The Family Court heard testimony from the Former Step-Grandfather, his daughter, the Mother, and the Father. The Former Step-Grandfather presented testimony and evidence that he spent substantial time with the Child while he and the Grandmother shared the same residence, bought Christmas presents for the Child, set up a college fund for the Child, and named the Child in his will. The Mother and the Father objected to Former Step-Grandfather having visitation with the Child. They claimed he did not previously have a substantial relationship with the Child. The Mother also objected to visitation because the Former Step-Grandfather often called her dumb or stupid, sometimes in the Child's presence. According to the Former Step-Grandfather, he

would tell the Mother that her actions were dumb or stupid. The Mother presented evidence that the Former Step-Grandfather called the police multiple times between May 2018 and January 2019 to have her removed from the residence he shared with the Grandmother because she (and on one occasion the Child) was too noisy and she was not supposed to stay there under a July 2018 Family Court order in the divorce proceedings. In the calls, the Former Step-Grandfather said he could not speak with the Mother or Grandmother.

(5) On February 21, 2020, the Family Court denied the Former Step-Grandfather's petition. The Family Court found that that the Former Step-Grandfather had a substantial and positive relationship with the Child, but that the Former Step-Grandfather had not demonstrated, by clear and convincing evidence, that the parents' objections to visitation were unreasonable. This appeal followed.

(6) On appeal, the Former Step-Grandfather argues that the Family Court erred by failing to analyze the best-interest factors under 13 *Del. C.* § 722 and by determining that the Former Step-Grandfather did not meet his burden of proving, by clear and convincing evidence, that the parents' objections to visitation were unreasonable.

(7) This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are reviewed *de novo*.[3] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[4] To obtain third-party visitation, the Former Step-Grandfather first had to establish he had a substantial and positive prior relationship with the Child.[5] Because the parents objected to visitation, the Former Step-Grandfather also had to prove that: (i) visitation was in the Child's best interests under 13 *Del. C.* § 722;[6] (ii) the parents' objections were unreasonable by clear and convincing evidence; and (iii) visitation would not substantially interfere with the parent/child relationship by a preponderance of the evidence.[7]

(8) After concluding that the Former Step-Grandfather had shown he had a substantial and positive previous relationship with the Child and that the parents' testimony to the contrary was not credible, the Family Court held that the Former Step-Grandfather had not shown, by clear and convincing evidence, that the parents'

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] 13 *Del. C.* § 2410(a)(1).
[6] 13 *Del. C.* § 2412(a)(1). The best-interest factors include: (i) the wishes of the parents; (ii) the wishes of the child; (iii) the interaction of the child with his parents, relatives and any other residents of the household; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance of the parents with their rights and responsibilities to their child; (vii) evidence of domestic violence; and (viii) the criminal history of any party or resident of the household. 13 *Del. C.* § 722.
[7] 13 *Del. C.* § 2412(a)(2)(d).

4

objections to visitation were unreasonable. The Former Step-Grandfather is correct that the Family Court did not conduct a best-interest analysis under 13 *Del. C.* § 722. According to the Family Court, this was "not a best interest analysis as to" the Child, "and were that the case, the Court would likely reach a different conclusion."[8] If the Family Court was suggesting that a consideration of the § 722 best-interest factors is not part of the third-party visitation analysis, that would be erroneous.

(9)     But we do not believe that is what the Family Court meant to suggest. The Family Court laid out the appropriate standard for third-party visitation in its order.[9] The later reference to the best-interest analysis is better read as the Family Court's recognition—inartfully expressed—that it could not grant visitation unless the Former Step-Grandfather satisfied *all* of the relevant criteria under § 2412.[10] Even if the best-interest factors weighed in favor of the Former Step-Grandfather's petition as the Family Court suggested, the Family Court still could not grant visitation unless the Former Step-Grandfather also showed, by clear and convincing evidence, that the parents' objections to visitation were unreasonable, and by a preponderance of the evidence, that visitation would not substantially interfere with the parents' relationship with the Child.[11] In other situations involving multi-

---

[8] Order at 15 (Del. Fam. Ct. Feb. 21, 2020).
[9] *Id.* at 12-13 & n.8.
[10] *Grant v. Grant*, 173 A.3d 1051, 1053 (Del. 2017) ("The court may grant third-party visitation only if all three statutory requirements are met.").
[11] 13 *Del. C.* § 2412(a)(2)(d); *Grant*, 173 A.3d at 1057.

element standards that a movant must satisfy to obtain relief, this Court has held that it is unnecessary to consider all of the elements if one of the required elements is unsatisfied.[12]

(10) The Former Step-Grandfather contends that the absence of a best-interest analysis deprived the Family Court of the necessary context to evaluate the reasonableness of the parents' objections to visitation, but the Family Court's order denying visitation rebuts this claim. In the order, the Family Court reviewed the testimony and other evidence offered by the parties in support of their positions. This evidence encompassed many of the best-interest factors, including the parents' wishes, the interaction of the Child with his relatives, the mental and physical health of the parties, and the parents' criminal histories. The Family Court did not lack a sufficient context to evaluate the parents' objections to visitation.

(11) Finally, the Family Court did not err in concluding that the Former Step-Grandfather failed to show, by clear and convincing evidence, that the parents' objections to visitation were unreasonable. In concluding that the Mother's objections to visitation were not clearly unreasonable, the Family Court recognized the strained relationship between the Mother and the Former Step-Grandfather, which included their inability to communicate with each other and the Former Step-

---

[12] *See, e.g., State v. Reyes*, 155 A.3d 331, 354-55 (Del. 2017) (recognizing that it was unnecessary to consider two of three elements necessary for a *Brady* violation because the movant failed to establish the third element of prejudice).

Grandfather making negative comments to and about the Mother. This strained, or one might say toxic, relationship, was further illustrated by the Former Step-Grandfather's calls to police, at least one of which was based on the Child crying and was made at night when it was not in the Child's best interest to be awoken and removed from the home. The record supports the Family Court's findings.

(12) In dismissing the Family Court's findings as insufficient to deny visitation, the Former Step-Grandfather fails to acknowledge that he had the burden of proving, by clear and convincing evidence, that the parents' objections to visitation were unreasonable. The Family Court did not err in concluding that he did not meet this burden. "[T]o protect parents' constitutional liberty interest [in making decisions concerning the care of their children], courts must grant 'special weight' to parents' views on visitation and their children's best interests."[13] Having carefully considered the parties' positions and the record on appeal, we conclude that the Family Court's denial of the Former Step-Grandfather's petition for third-party visitation should be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura_____
Justice

---

[13] *Grant*, 173 A.3d at 1053 (quoting *Troxel v. Granville*, 530 U.S. 57, 69 (2000)).